**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**ANTHONY HEMPHILL,**      §
                         §
**v.**                               §           **A-11-CV-253-SS**
                         §
**RICK THALER, Director**     §

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE SAM SPARKS
         UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are pro se Petitioner Anthony Hemphill's Petition for Writ of Habeas Corpus (Document 2), Hemphill's Support Brief (Document 3), and Answer with Brief in Support of Respondent, Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (Document 13). Hemphill did not file a reply. For the reasons set forth below, the undersigned finds that the petition should be denied.

**STATEMENT OF THE CASE**

**I.     PROCEDURAL HISTORY**

The Director has custody of Hemphill pursuant to a judgment and sentence of the 21st District Court of Burleson County, Texas, in Cause Number 13,533, styled *State of Texas v. Anthony*

*Hemphill. Ex parte Hemphill*, No. WR-74,043-01, at 67-70.[1] Hemphill pleaded not guilty, but a jury found him guilty of aggravated robbery and sentenced him to 55 years of confinement on December 6, 2007. *Id.*; C.R. at 38-41.

Hemphill appealed, arguing that the trial court abused its discretion by admitting evidence of several extraneous offenses, and that he received ineffective assistance of counsel at trial because his attorney failed to object to evidence of some extraneous offenses. The Tenth Court of Appeals of Texas rejected both challenges and affirmed his conviction. *Hemphill v. State*, No. 10-08-00032-CR, 2009 WL 3488053 (Tex. App.–Waco Oct. 28, 2009, no pet.). He did not petition the Texas Court of Criminal Appeals for discretionary review.

After Hemphill filed a state application for writ of habeas corpus raising ineffective assistance and coerced confession claims, the Texas Court of Criminal Appeals directed the trial court to make findings of fact on his ineffective assistance claims. *Ex parte Hemphill*, No. WR-74043-01, 2010 WL 2619634 (Tex. Crim. App. June 30, 2010); *Ex parte Hemphill*, No. WR-74,043-01, at 13-26. The trial court held a hearing and took testimony from Hemphill's trial counsel, and then concluded that Hemphill's defense counsel's performance was not deficient. *Ex parte Hemphill*, No. WR-74,043-01, Supp., Am. Findings of Fact and Concs. of Law, at 2-3 (Nov. 19, 2010). Specifically, the trial court issued findings that Hemphill's trial counsel did not fail to object to the admission of extraneous offenses, and for those offenses that he did fail to object to, trial counsel could have had a strategic reason for not doing so. *Id.* at 2. The court also found that Hemphill's trial counsel did advise Hemphill to testify at trial, based on his belief that the testimony

---

[1] Citations to pleadings and documents in the state-court habeas record appear as *Ex parte Hemphill*, Application No. WR-74,043-01, followed by a page number. C.R. at [#] indicates a reference to the Clerk's Record in the trial court, and [#] R.R. at [#] indicates citation to a particular volume of the Reporter's Record of the trial.

was necessary in order to establish the defense of duress. *Id.* The trial court further found that defense counsel did not fail to cross-examine the prosecution's key witness and the decision to limit the cross-examination was a strategic one based on the witness's status as a victim. *Id.* at 3. Lastly, the trial court found that Hemphill's appellate counsel provided him with adequate notification of his right to file a pro se petition for discretionary review in his direct appeal. *Id.*

Following the trial court's issuance of its findings, the Texas Court of Criminal Appeals denied Hemphill's application without written order on findings of the trial court. *Ex parte Hemphill*, No. WR-74,043-01, Supp., at cover. Hemphill subsequently filed his federal petition in March of 2011. Pet. at 10.

## II.    FACTUAL BACKGROUND

On July 15, 2007, Samantha Wetterman was working as a clerk on the overnight shift at a Cefco convenience store in Somerville, Texas. 3 R.R. at 27-29. Hemphill entered the store about 3:30 a.m., with a black do-rag covering his face and carrying a .45 caliber pistol. *Id.* at 40-42, 50, 79. Wetterman recognized Hemphill because he was a regular customer and he had been in the store earlier that night wearing the same jeans and shoes. *Id.* at 35-36, 41, 43, 53-54. He threatened Wetterman not to make any sudden moves or he would shoot her. *Id.* at 42. He also instructed her to go to the register and put the money from the register in a bag. *Id.* at 43, 48. After she complied with his instructions, he left the store. *Id.* at 55. Wetterman testified that Hemphill did not seem "at all" nervous. *Id.* at 55. These events were recorded by the store's video surveillance camera and the videotape was shown to the jury. *See, e.g., id.* at 36-40.

Another store clerk who worked at a different convenience store in town, Wright Ratliff, Jr., also testified. *Id.* at 57-58. Like Wetterman, he worked the graveyard shift on the night of the

robbery. *Id.* at 58-59. Ratliff testified that Hemphill, wearing the same clothing as the Cefco robber, made a quick stop at his store, the Handy Stop, around 1:30 a.m. that night. *Id.* at 59-63. Hemphill explained at trial that his original plan was to rob the Handy Stop, but he decided not to after realizing that Ratliff, who is his cousin, was working at the Handy Stop that night. *See, e.g., id.* at 163.

The prosecution then called Officer Robert Sweatt, Jr., who responded to the robbery. *Id.* at 67-68. After watching the surveillance video of the robbery and interviewing the victim, together with his long familiarity with Hemphill, Sweatt testified that he knew that Hemphill was the robber. *Id.* at 70.

The prosecution also called investigator Bill Keel, who investigated the robbery and located Hemphill a few days later, on July 18, 2007. *Id.* at 78-79, 85. Keel had also recognized Hemphill in the store videotape from his stature, walk, and mannerisms. *Id.* at 81. On July 21, 2007, Keel read Hemphill his *Miranda* rights and conducted a videotaped interview. *Id.* at 98-99. Keel testified that during this interview, Hemphill gave a detailed oral and written confession to the crime, which Keel read to the jury. *Id.* at 106-18. Based on information from Hemphill, Keel was able to locate his discarded clothing from the robbery. *Id.* at 118-20.

At trial, Hemphill testified and presented a duress defense. *See, e.g., id.* at 23-24, 135-46. He did not deny that he robbed the store, but claimed that friends or associates pressured him to commit the robbery by threatening him if he refused to do so. *See, e.g., id.* at 23, 183-91. The court of appeals summarized the factual background regarding Hemphill's defense of duress:

> Hemphill was charged with robbing a store clerk at gunpoint at a local convenience store in Somerville. He confessed to police and did not deny committing the robbery at trial, instead contending that he committed the robbery under duress. Hemphill

testified that Boo Powell (whom Hemphill associated with) and his "gang" threatened to "jump" (kill or seriously injure) him if he did not carry out the robbery. Hemphill's videotaped statement and confession states in part:

> The guys that I hung around with said that if I did stuff that I could get into the gang. If I sold drugs for them, like I'd sell $150 worth and I could keep $50, so I did because I thought that it would be cool.
>
> Now, on CEFCO it didn't matter how much money I got, I had to give it to them and I would be taken care of later. If I didn't get any money and give it to them, then they were going to jump me. After doing the robbery, I never got any of the money that I was supposed to.
>
> . . .
>
> When I got talked into doing this, I was over at Oliver Phillips' house. Jeremy Vela, Boo Powell and Oliver were all there.
>
> . . .
>
> Let me kind of start from the first. Me and Boo was talking about it earlier that day. He came to my house and was chilling with my brother. My brother didn't know anything about the robbery. Boo said, if you're going to do this, you got to get pumped. You got to get pumped for it. He said, rob the store and give me the money. Boo likes to gamble so we went out to the country to some of his buddies family and chilled and drunk beer for about three or four hours. . . . There was like two carloads of us.
>
> When we came back to Somerville it was early in the morning. I rode with Boo. Boo really, like, pumped my head up. When we got to town, Boo stopped off . . . where he lives. . . .
>
> Boo went inside his apartment. Before he went inside he said, now, you going to do this? You going to do this? I said yes. Boo came back out with a gun, he gave me the gun, and went into the trunk of his car and got a black jacket and a black do-rag. I put it on. . . .
>
> . . .
>
> The next day Boo came to my house. I gave him his gun back and all the money. He said that I didn't give him all of it, that there should be more.

*Hemphill v. State*, No. 10-08-00032-CR, 2009 WL 3488053, at *1 (Tex. App.–Waco Oct. 28, 2009,

no pet.) (footnote omitted). Although at times, Hemphill used the term "gang" at trial to reference

his friends and associates for whom he dealt drugs, he also testified that there was no gang, but just a group that hung out together. 3 R.R. at 145-46, 162.

After Hemphill's testimony admitting the robbery and advancing his defense of duress, the prosecution elicited testimony during cross-examination regarding extraneous offenses committed by Hemphill. *Id.* at 152-56.

The jury was instructed on the affirmative defense of duress, but found Hemphill guilty of aggravated robbery and sentenced him to 55 years of confinement and a $10,000 fine. *Ex parte Hemphill*, No. WR-74,043-01, at 67-70.

## III.   HEMPHILL'S CLAIMS FOR RELIEF

Hemphill contends that he is entitled to habeas relief because:

1.    The trial court erred by overruling Hemphill's objections to the admission of extraneous offenses. Pet. at 6; Supp. Br. at 16-22.[2]

2.    Hemphill was denied effective assistance of counsel at trial because his attorney: (a) failed to object to evidence of extraneous offenses; and (b) failed to cross-examine the prosecution's key witness. Pet. at 6-7; Supp. Br. at 23-26.

3.    The prosecution obtained Hemphill's conviction through a coerced confession. Pet. at 7; Supp. Br. at 27-28.

## IV.   EXHAUSTION OF STATE REMEDIES AND STATUTE OF LIMITATIONS

The Director concedes that Hemphill's petition is timely. Answer at 6; *see also* 28 U.S.C. § 2244(b), (d). The Director also admits that Hemphill has sufficiently exhausted his state court remedies for the claims presented. Answer at 6; *see also* 28 U.S.C. § 2254(b).

---

[2]  Hemphill attached a brief in support of his petition, which is cited as "Supp. Br."

**I.** **REVIEW UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996**

The Supreme Court recently had the opportunity to summarize the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act. *See Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 783-85 (2011). The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 131 S. Ct. at 784.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Court noted that it had

previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)). When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 785 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to

the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

## II. HEMPHILL'S CLAIMS

Having independently reviewed the state-court record and Hemphill's asserted claims, the Court finds nothing unreasonable or contrary in the state court's application of clearly established federal law or in its determination of facts in light of the evidence, as discussed below.

### A. Trial Court Evidentiary Rulings

Hemphill argues that the trial court erred by overruling his relevance objections to the admission of two extraneous offenses, specifically, aggravated assault and criminal mischief. Pet. at 6; Supp. Br. 16-22. Hemphill also conclusorily asserts that the admission of the evidence impaired his due process rights and denied him a fair trial. *Id.* at 22. The Director counters that the trial court did not err, this Court should defer to the state court's interpretation of its own law, and even if the trial court did err, the alleged errors did not render the trial as a whole fundamentally unfair. Answer at 11-16.

Hemphill's complaint is grounded in state law, rather than constitutional or federal law. Because federal habeas review is limited to matters of federal and constitutional law, the role of the federal habeas court in reviewing a challenge to a trial court's evidentiary ruling is limited to

determining whether the trial-court error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause. *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Accordingly, this Court cannot review the assertion of evidentiary errors except to the extent that the purported errors might have violated Hemphill's due-process right to a fair trial.

On habeas review under the AEDPA, a constitutional error in a state-court criminal trial is sufficiently prejudicial, and can support habeas relief, only when it has a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation and quotation omitted); *see also, e.g., Hughes v. Quarterman*, 530 F.3d 336, 345 (5th Cir. 2008). Assuming, without deciding, that the challenged trial court rulings were erroneous, Hemphill fails to establish that the rulings had a substantial and injurious effect or influence in determining the jury's verdict. The jury was presented with a videotape of Hemphill committing the robbery, he confessed to committing the robbery, the convenience-store clerk eyewitness who was present during the robbery identified him as the robber, another store-clerk eyewitness who saw him just prior to the robbery identified him by his clothing, and there was no evidence beyond his own testimony supporting his duress defense. *See* 3 R.R. at 35-41, 43, 50, 59-62, 111-18, 138-42, 145-46, 163-64; State's Exs. 4-20, 24. Thus, aside from any erroneously admitted evidence of extraneous offenses, overwhelming evidence supported the jury's verdict.

Hemphill fails to show that the state habeas court's denial of his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d).

**B.     Ineffective Assistance**

Hemphill claims that he was deprived of effective assistance of counsel by his trial attorney by his: (1) failure to object to the presentation of extraneous offenses; and (2) failure to cross-examine the State's key witness.  Pet. at 6-7; Supp. Br. at 23-26.

**1.     Failure to Object to Extraneous Offenses**

Hemphill argues that his trial counsel should have objected during the prosecutor's cross-examination of Hemphill to the admission of extraneous offenses, specifically, aggravated assault, criminal mischief, drug dealing, arson, and assault of guards at the jail.  Supp. Br. at 9-16, 23-25. Hemphill contends that counsel's failure to do so could not be regarded as strategic because the evidence was inadmissible and the lack of objections cumulatively undermined his defense of duress. *Id.*

The Director counters that Hemphill fails to demonstrate the necessary deficient attorney performance or resulting prejudice, as required by established Supreme Court precedent.  Answer 18-22.  The Director asserts that trial counsel did not perform deficiently because he did make some objections to the presentation of extraneous offenses, and to the extent that trial counsel did not object to others, he acted reasonably because the extraneous offenses were arguably admissible under Texas Rules of Evidence 404(b) and 609, in order to attack Hemphill's credibility and address his duress defense.  *Id.* at 19-20.  The Director further argues that the decision not to object to some of the extraneous offenses was a matter of trial strategy, and as the state habeas court found, could have been motivated by a strategic desire not to draw undue attention to the extraneous offenses in light of the fact that others were admitted over trial counsel's objection.  Answer at 21.  With regard to the prejudice requirement for this claim, the Director argues that even if trial counsel acted

deficiently with regard to the evidence of extraneous offenses, Hemphill cannot show any resulting prejudice because the evidence overwhelmingly supported the jury's verdict of guilt. Answer at 20-21.

Ineffective assistance of counsel claims are analyzed under the well-settled requirements set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

For the first requirement, the proper measure of attorney performance is "simply reasonableness under prevailing professional norms." *Id.* at 688. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686-89. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court has established that counsel should be "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and cautioned against an "'intrusive post-trial inquiry into attorney performance'" and the "'tempt[ation] for a

defendant to second-guess counsel's assistance after conviction or adverse sentence.'" *Cullen v. Pinholster*, – U.S. –, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 688-90).

For the second requirement, the question is whether there is a reasonable probability that, absent the alleged error, the result of the proceeding would have been different, a question that must be considered in the context of the entire evidence. *Strickland*, 466 U.S. at 694-95. A reasonable probability is "'a probability sufficient to undermine confidence in the outcome,'" *Pinholster*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 694), which requires a "'substantial,' not just 'conceivable,' likelihood of a different result," *id.* (quoting *Harrington*, 131 S. Ct. at 791).

Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a substantial likelihood that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*; *Strickland*, 466 U.S. at 694. Because a habeas petitioner must satisfy both *Strickland* requirements to demonstrate ineffective assistance, a failure to establish either deficient performance or prejudice makes it unnecessary to consider the other requirement. *Id.* at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

In addition to the "highly deferential" view that the Court takes of counsel's performance under *Strickland*, 466 U.S. at 689, the Court is also limited in its examination of such claims by the "'deferential lens of § 2254(d).'" *Pinholster*, 131 S. Ct. at 1404 (quoting *Knowles v. Mirzayance*, 556 U.S. 111 n.2 (2009)). In this way, the Court's review of the state habeas court's determination of ineffective assistance claims is "'doubly'" deferential. *Harrington*, 131 S. Ct. at 788 (quoting *Knowles*, 129 S. Ct. at 1420).

As discussed below, Hemphill's ineffective-assistance claim fails to satisfy *Strickland* and the AEDPA's prerequisites.

Hemphill relies on several extraneous offenses that were admitted at trial during his cross-examination testimony:  drug dealing, aggravated assault, criminal mischief, arson, and assaulting jail guards.  3 R.R. at 150-61.  With regard to testimony concerning Hemphill's involvement with an aggravated assault, his counsel did make a relevancy objection.  *Id.* at 152-53. When the prosecutor responded by stating, "if [Hemphill] is saying he would have never done anything like this except he was threatened by others, I think that his being involved in this assault is very relevant," the trial court overruled the objection.  *Id.* at 153.  The prosecutor then cross-examined Hemphill about his involvement with criminal mischief and arson.  *Id.* at 153-57. Trial counsel did not object until the prosecutor began inquiring about details relating to the arson charge, at which point the trial court sustained the relevancy objection .  *Id.* at 157-58.

Trial counsel acted reasonably in limiting his objections to the extraneous offenses because they were arguably admissible at trial.  Rule 404(b) of the Texas Rules of Evidence provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

TEX. R. EVID. 404(b).  Because Hemphill presented a duress defense based on the theory that he would not have committed the aggravated robbery if his associates had not threatened him, the extraneous offenses became relevant and likely admissible as proof of motive and intent, which was the essential basis of the prosecutor's rebuttal to defense counsel's initial relevancy objection.  *See* 3 R.R. at 153.  Once the trial court overruled trial counsel's objection on this basis, trial counsel acted reasonably in not making additional objections on the same grounds.  In addition, Texas Rule

of Evidence 609 permits a prosecutor to challenge a witness's credibility with evidence that he had been convicted of felonies or other crimes of moral turpitude. *See* TEX. R. EVID. 609(a).[3] Because evidence of these offenses was arguably admissible, trial counsel was not deficient for failing to object, or inadequately objecting, to them.

Moreover, the state habeas court determined that defense counsel's decision to not object was a matter of trial strategy. *See Strickland*, 466 U.S. at 689 (stating "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'"(citation omitted)). The state court explained:

> The Court finds that Applicant's trial counsel did not fail to object to the admission of all extraneous offenses. For those that he did fail to object to, trial counsel could have had a strategic reason for not object to their admission, to-wit: a desire not to draw undue attention to these extraneous offenses. This is especially true considering that others were admitted over his objection.

*Ex parte Hemphill*, No. WR-74,043-01, Supp., Am. Findings of Fact and Concs. of Law, at 2. Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are entitled to a presumption of correctness. Hemphill fails to meet his burden of rebutting that presumption with clear and convincing evidence.

Even if defense counsel had acted deficiently with regard to all or some of the extraneous offenses, Hemphill has not shown the requisite resulting prejudice for an ineffective assistance claim because the evidence overwhelmingly supported the jury's verdict of guilt. The jury was shown the

---

[3] Rule 609(a) states that

[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

TEX. R. EVID. 609(a).

videotape of Hemphill committing the robbery, he confessed to committing the robbery, he admitted to the aggravated robbery in testimony at trial, and there was no evidence beyond his own testimony supporting his duress defense. Because of the overwhelming evidence in support of the verdict, Hemphill cannot establish prejudice.

The state habeas court's denial of Hemphill's ineffective assistance claim was not an unreasonable or contrary application of clearly established federal law. This claim should be denied.

### 2. Failure to Cross-Examine Witness

Hemphill argues that his trial counsel was ineffective by failing to cross-examine the store clerk who was the victim of the aggravated robbery to elicit "key elements" of his defense. Pet. at 7; Supp. Br. at 26. The Director contends that the claim should be denied because trial counsel did cross-examine the witness and any limitations on his cross-examination derived from a trial strategy of avoiding an attack on the victim, as found by the state habeas court, which is entitled to deference. Answer at 22-23.

Defense counsel did, in fact, cross-examine the witness at issue. *See* 3 R.R. at 22-24. Moreover, after a hearing in which the state habeas court received testimony from Hemphill's trial counsel, the state court concluded that

> trial counsel did not fail to cross-examine the State's key witness and that the manner of trial counsel's cross-examination was a strategic decision as to how to approach an individual who was clearly a victim based on the video evidence in the case.

*Ex parte Hemphill*, No. WR-74,043-01, Supp., Am. Findings at 3.[4]  Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are entitled to a presumption of correctness.  Keeping in mind that the proper measure of attorney performance is "simply reasonableness under prevailing professional norms," and that judicial scrutiny of counsel's performance must be highly deferential and avoid second-guessing, *Strickland,* 466 U.S. at 688.  Hemphill fails to provide clear and convincing evidence that his attorney committed an error that could not constitute sound trial strategy or fell below the norms of reasonable professional judgment in the circumstances of his trial.

In addition to failing to show deficient performance under *Strickland*, Hemphill fails to demonstrate resulting prejudice, that is, a reasonable probability that, but for counsel's failure to more extensively cross-examine the store clerk, the outcome of his trial would have been different.  Given the videotape of the armed robbery and the lack of evidence supporting Hemphill's claimed duress defense, no prejudice has been shown.

Hemphill fails to show that the state court's decision was an unreasonable application of the clearly established federal law of *Strickland*, or was contrary to that established law, or was based on an unreasonable determination of facts.  *See* 28 U.S.C. § 2254(d), (e).  Accordingly, the Court should conclude that habeas relief is not available for this claim.

---

[4]At the state court habeas hearing, trial counsel elaborated on his strategy in limiting cross-examination of the store clerk:

> [A]s a trial attorney, when you have a victim on the stand, I do not want to alienate the victim such as to the effect that it's going to antagonize–going to irritate the jury so much as to affect my client adversely.  So I don't generally attack a victim who we know is a victim.  I mean, you know, it's one thing to attack someone who is making a claim that I believe is false, but we have a videotape of the aggravated robbery, I don't see the benefit of alienating that witness even further in front of the jury and getting [them] more angry at my client.

*Ex parte Hemphill*, No. WR-74,043-01, Habeas R.R. at 33-34 (Oct. 22, 2010).

### C.    Involuntary Confession

Hemphill complains that police coerced his confession to the robbery by threatening to place him in a cell with bigger and older inmates and telling him that he could receive the death penalty if he did not "sign the necessary paperwork." Pet. at 7; Supp. Br. at 27-28. Hemphill also asserts that he was denied counsel during his initial interrogation, that police did not inform him of his right to counsel until after he had already confessed, and that police told him that his request for an attorney showed that he was guilty. *Id.* at 28. The Director argues that this claim should be denied because it is conclusory and not supported by the record. Answer at 24-26.

The Supreme Court has recognized that "[t]actics for eliciting inculpatory statements must fall within the broad constitutional boundaries imposed by the Fourteenth Amendment's guarantee of fundamental fairness." *Miller v. Fenton*, 474 U.S. 104, 110 (1985). Two factors determine whether an accused has voluntarily and knowingly waived his constitutional protections against self-incrimination: first, the waiver of the right must be voluntary in that it was not the product of intimidation, coercion, or deception, and second, the relinquishment must be made with full awareness of the nature of the right being waived. *Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). A confession is coerced, or involuntary, if "the totality of the circumstances" demonstrate that the defendant did not decide to confess of his own free will. *Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991).

The voluntariness of a confession is ultimately a legal determination. *Miller*, 474 U.S. at 110. As such, a federal habeas court must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160

F.3d 218, 222 (5th Cir. 1998). Applying these principles to this case, the Court should conclude that the state court did not unreasonably apply clearly established federal law to the facts of Hemphill's case in rejecting the claim that his confession was coerced.

The record reflects that police officers reviewed Hemphill's *Miranda* rights with him at least twice, that he signed two forms that recited his rights, and initialed next to each right, and that he indicated that he understood his rights. More specifically, four hours prior to his confession, the interviewing police officer reviewed each of Hemphill's *Miranda* rights with him and Hemphill signed a statement indicating such and also that he understood his rights. State's Ex. 23 (signed statement regarding *Miranda* rights); *see also* 3 R.R. at 98-105 (testimony by interviewing police officer indicating that he reviewed *Miranda* rights with Hemphill, Hemphill initialed and signed the form acknowledging his rights, and Hemphill indicated that he understood the rights). In addition, the interviewing police officer testified at trial that Hemphill did not have questions about his *Miranda* rights, he indicated that he wished to waive his rights and give a statement, he did not indicate that he wanted an attorney present during the interview, and he never asked to terminate the interview. 3 R.R. at 103-04. After giving his videotaped confession, Hemphill also signed a separate statement that accompanied a transcript of his confession reflecting that he understood his *Miranda* rights and that his confession statement was "given voluntarily, without fear of duress or threat, and without promise of leniency." State's Ex. 24; *see also* 3 R.R. at 107-08. Lastly, Hemphill never challenged the voluntariness of his confession at trial either during his testimony or through a motion by counsel; instead, Hemphill admitted to the robbery in his testimony. *See, e.g.*, *id.* at 163-64. Hemphill points to no evidence to support his contentions, raised for the first time in this Court, regarding coercion.

In any event, even assuming *arguendo* that the confession was coerced, any constitutional error in admitting the confession as evidence at trial fails to meet the standard for habeas relief. As explained, on habeas review under the AEDPA, the prejudice of a constitutional error in a state-court criminal trial is measured by *Brecht*'s "substantial and injurious effect" standard. 507 U.S. at 623, 113 S. Ct. at 1714. Assuming, without deciding, that Hemphill's confession was coerced, he fails to establish that the statement had a substantial and injurious effect or influence in determining the jury's verdict.

The confession was cumulative of other evidence, and thus harmless even if erroneously admitted. In addition to the confession statement, the jury was presented with a videotape of Hemphill committing the armed robbery, his testimony as to how he committed the robbery, testimony by the convenience-store clerk eyewitness who was present during the robbery and identified him as the perpetrator, and testimony by another store-clerk eyewitness who saw him just prior to the robbery and identified him by his clothing. *See* 3 R.R. at 35-41, 43, 50, 59-62, 111-18, 136, 138-39, 163-64; State's Exs. 4-20. In addition, there was simply no evidence to support Hemphill's claim that he was threatened into committing the robbery beyond his own assertions. *See, e.g.*, 3 R.R. at 136, 138-42, 145-46. Moreover, Hemphill does not argue that his trial strategy would have been different or he would not have testified had the confession not been admitted. He thus fails to satisfy the *Brecht* standard for habeas relief and demonstrate that any erroneously admitted statement was a "crucial, highly significant factor in [his] conviction." *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998).

The state court's rejection of this claim did not involve an unreasonable application of clearly established federal law or one contrary to that law, or an unreasonable determination of underlying facts. *See* 28 U.S.C. § 2254(d). The Court should deny habeas relief for this claim.

## RECOMMENDATION

It is recommended that Hemphill's application for writ of habeas corpus be denied.[5]

## CERTIFICATE OF APPEALABILTY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases in which a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

_____

[5] On the cover of his brief, Hemphill appears to request oral argument on his habeas petition. This request does not appear elsewhere. To the extent that Hemphill is indeed requesting argument on his petition, the Court should deny the request. The arguments are sufficiently presented in the parties' briefing and oral argument is not warranted.

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Hemphill's Section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return

receipt requested.

SIGNED this 13th day of December, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE